UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

UNITED STATES OF AMERICA,

     v.                                                    **DECISION AND ORDER**
                                                              19-CR-170-A
ROLAND EADY and ANGEL-LIA CRAWFORD,

                    Defendants.

═══════════════════════════════════

     This Decision and Order memorializes in writing the Court's reasons for granting the respective motions to sever by defendant Roland Eady (Dkt. No. 378) and defendant Angel-Lia Crawford (Dkt. No. 418), pursuant to Rule 14 of the Federal Rules of Criminal Procedure.

     After the motions to sever were filed, the Government filed responses in opposition (Dkt. Nos. 395, 422), and Eady filed a reply (Dkt. No. 399).  On June 10, 2022, the Court heard oral argument on Eady's severance motion and initially considered the matter submitted and deemed Crawford's subsequent motion submitted on the papers.  The Court later directed the parties (Dkt. No. 448) to file supplemental briefing on discrete, severance-related issues.  The parties filed those supplemental papers (Dkt. Nos. 454, 456), and the Court heard argument on February 22, 2023, at which time the Court again determined it required further

briefing.  The parties then filed a second round of supplemental briefing (Dkt. Nos. 460,[1] 464, 467) in accordance with the Court's directive (Dkt. No. 458).

On April 19, 2023, the Court held a status conference (Dkt. No. 475) at which time it considered the matter submitted; granted Eady's and Crawford's motions for severance from the bench and indicated it would issue a written decision setting forth its reasoning for doing so in detail; set dates for the severed trials (*i.e.*, jury selection for Eady and Crawford on July 11, 2023, and jury selection for co-defendants Gregory Hay and Alphonso Payne on November 6, 2023); and scheduled a May 30, 2023 change-of-plea date for co-defendant Raejah Blackwell.

## **BACKGROUND**

The Court assumes the parties' familiarity with the procedural history, record, and arguments raised, which the Court explains only to the extent deemed necessary herein.

This matter is a multi-defendant case with seven defendants who are charged in a 26-count Second Superseding Indictment (Dkt. No. 70), returned August 26, 2020.  Five defendants remain in the case.  Eady and Crawford (the "moving defendants") are two of the three remaining "obstructionist" defendants—the defendants charged with obstruction-of-justice.  Blackwell, the third, did not file a motion to sever in response to the Court's text order (Dkt. No. 416) setting a schedule for such motions.  Rather, the parties have maintained during the

---

[1] Co-defendants Gregory Hay and Alphonso Payne filed a memorandum in support of Eady's and Crawford's severance motions, after raising an antagonistic defense argument at the February 22, 2023 oral argument.

pendency of these proceedings that a pretrial resolution is likely with respect to Blackwell. *See*, *e.g.*, Dkt. Nos. 419, 454 p. 1 n.1, 475. Aside from the remaining obstructionist defendants, Hay and Payne (the "non-moving defendants") are the two "lead" defendants who are charged with shooting and killing Joshua Jalovick (a federal witness and informant), along with drug- and firearms-related offenses. According to the Government, Jalovick was shot multiple times by Payne, and then by Hay, at approximately 6:05 p.m. on July 1, 2019 (*see* Dkt. No. 422, pp. 1-2, 7).

Eady is charged in Counts 20 and 21 with obstruction of justice, in violation of 18 U.S.C. §§ 1512(c)(2) (tampering with a witness, victim, or an informant) and 1503 (influencing or injuring officer or juror generally), in connection with the federal grand jury testimony he gave on August 28, 2019. It is alleged that Eady testified falsely and evasively about the individuals who were present in the backyard of 87 Freund Street on July 1, 2019 at the time of Jalovick's death. Specifically, the Government argues that Eady failed to identify his relatives, or Hay and Payne, as being present in the backyard.

Crawford is charged in Counts 24 and 25 with obstruction of justice, in violation of 18 U.S.C. §§ 1512(c)(2) and 1503, in connection with her federal grand jury testimony given on or about April 29, 2020. It is alleged that Crawford testified falsely and evasively about whether she was with Jalovick on Freund Street during the afternoon of July 1, 2019. Crawford is also charged in Count 26 with false declarations before a grand jury, in violation of 18 U.S.C. § 1623(a), for denying she was with Jalovick on Freund Street at approximately 5:30 p.m. on July 1, 2019,

which was when an individual met with Jalovick and provided him with money to go to a liquor store, about 10 to 15 minutes before he was murdered.

## DISCUSSION

Preliminarily, Eady argued that the Court should consider his severance motion on the merits even though the deadline for pretrial motions before the Magistrate Judge was October 16, 2020.  He argued that the Court had "good cause" (*see* Fed. R. Crim. P. 12(c)(3)) to decide the motion because he "implicitly sought severance" in October 2020 (*see* Dkt. Nos. 96 and 177), he previously objected to Speedy Trial Act exclusions on the record, and the case was in a different procedural posture when he filed the motion than it was in October 2020. The Government did not object to this argument—and the motion was fully briefed and argued.  Thus, the Court saw no reason to deny Eady's motion as untimely.

Eady sought to incorporate by reference misjoinder arguments made in co-defendant Daeshawn Stevenson's October 2020 motion to sever pursuant to Federal Rule of Criminal Procedure 8(b) (*see* Dkt. No. 97-2, pp. 5-6; Dkt. No. 118), which were previously rejected by this Court (*see* Dkt. No. 176).  The Court summarily rejected this misjoinder argument and instead focused on Eady's twofold argument that severance was warranted pursuant to Federal Rule of Criminal Procedure 14, principally to: (1) protect his Sixth Amendment right to a speedy trial, and (2) protect him from spillover prejudice.

Eady anticipated that his Sixth Amendment right to a speedy trial would be jeopardized if he had to wait until Hay and Payne were ready for trial.  He argued that he "ha[d] been requesting a trial date for at least 18 months [at the time the

motion was filed], to no avail," and moved to sever his case from that of Hay's and Payne's, arguing that any joint trial was likely "many months off."  Moreover, Eady asserted that the risk of spillover prejudice likewise warranted severance.  Eady requested that the Court separate the remaining defendants into two distinct trial groups, asking to set a trial date for him and the two other remaining obstructionist defendants (Crawford and Blackwell) in the near-term and to hold a trial for Hay and Payne sometime thereafter.

Crawford argued that the Court should conduct two separate trials but proposed that the Court "leave solely the persons involved with the murder and who were at the scene of the murder in one group" (Dkt. No. 418-1, p. 3), thus positing the Court should try her, alone, and separately try Hay and Payne along with Eady and Blackwell.  She argued that her constitutional rights to a fair trial would otherwise be infringed upon, due to anticipated juror confusion and spillover prejudice.  Eady opposed Crawford's proposal to try Eady with the lead defendants, and Crawford separately in her own trial.

Eady and Crawford jointly argued that this was a "paradigmatic case for severance."

The Government opposed the motions to sever and argued a trial date should be set as to all remaining defendants.  The Government generally argued that strong limiting instructions would curtail any risk of spillover prejudice, and that Eady and Crawford underestimated the jury's ability to compartmentalize evidence.  In anticipation of the possibility the Court might decide to grant one or both motions to

sever, the Government requested that Hay and Payne be tried first due to its concerns about witness safety and possible witness retaliation.

## I.   <u>Rule 14 Standard</u>

"Even if properly joined under Rule 8, Rule 14 vests the court with discretion to sever the defendants' trials or provide any other relief that justice requires, if it finds that joinder appears to prejudice a defendant or the government."  *United States v. Gane*, 10-CR-90S, 2010 WL 4962955, 2010 U.S. Dist. LEXIS 124972, *3-4 (W.D.N.Y. Nov. 24, 2010).

Federal courts have a "preference . . . for joint trials of defendants who are indicted together."  *Zafiro v. United States*, 506 U.S. 534, 537 (1993).  "A number of equitable and practical considerations support this preference."  *United States v. Contreras*, 216 F. Supp. 3d 299, 303 (W.D.N.Y. 2016).  Joint trials "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987).  Joint trials also "enable more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit."  *Id.*  In addition, joint trials promote an efficient use of the Court's resources, as well as the time and resources of the Government and witnesses.  And, finally, joint trials prevent gamesmanship, because severing defendants has the effect of "randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand."  *Id.*  In short, "[c]onsiderations of efficiency and consistency militate in favor of trying jointly defendants who were indicted together."  *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003).

These considerations are not absolute, however.  Federal Rule of Criminal Procedure 14(a) allows a court to sever the trial of multiple defendants where a joint trial "appears to prejudice a defendant."

Given the importance of the policies discussed above, severance under Rule 14(a) is available in only limited circumstances: "The Supreme Court has instructed that a district court should grant a Rule 14 severance motion only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003), quoting *Zafiro*, 506 U.S. at 539.  "[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."  *Zafiro*, 506 U.S. at 540.  Instead, to prevail on a severance motion, a defendant has the "extremely difficult burden" of showing he or she would be so prejudiced by joinder that he or she would be denied a fair trial.  *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989).

## II.   <u>Application of Rule 14</u>

The Eastern District of New York memorialized some factors a district court is to consider when conducting a Rule 14 analysis, which the Court found useful here:

> Among the factors the court must consider in determining whether the prejudice of a joint trial rises to the level of a 'miscarriage of justice' are the following: the number of defendants and the number of counts; the complexity of the indictment; the estimated length of the trial; disparities in the amount or type of proof offered against the defendants; disparities in the degrees of involvement by defendants in the overall scheme; possible conflict between various defense theories or trial strategies; and,

7

> especially, prejudice from evidence admitted only against
> co-defendants but which is inadmissible or excluded as to
> a particular defendant.
>
> There are no precise tests applicable to one or a
> combination of these factors that can provide a foolproof
> resolution under Rule 14.

*United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987); *see United States v. Torres*, Case # 18-CR-6094-FPG, 2020 WL 4199075, 2020 U.S. Dist. LEXIS 129231, *14 (W.D.N.Y. July 22, 2020) (listing the same factors). "Ultimately, . . . 'Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts.'" *Id.*, quoting *Zafiro*, 506 U.S. at 541.

With these factors in mind as well as additional factors raised during the pendency of these proceedings, the Court weighed the various arguments for and against a joint trial in granting the motions to sever. As the Court expounds upon below, several factors did not favor severance, but other factors tipped the scale in favor of granting Eady's and Crawford's motions.

### A.     "Mega-Trial" Concerns, Number of Defendants, and Estimated Length of a Joint Trial

Crawford sought severance, in part, based upon the number of defendants indicted and the likelihood of a lengthy trial. She argued that breaking up the remaining defendants into different trial groups would help make the trial more manageable.

"[T]he Court is cognizant that the Second Circuit Court of Appeals has instructed that in cases involving lengthy trials of more than four months and ten or

more defendants, a district judge should abide by certain 'benchmarks' in exercising [his or] her discretion to sever the trial." *United States v. Jones*, 143 F. Supp. 2d 78, 92 (W.D.N.Y. 2015), citing *Casamento*, 887 F.2d at 1152.  The Court determined Crawford's reliance on *Casamento* was unavailing, as the instant case did not fall within the category of "mega-trials" discussed in that Second Circuit opinion.  *Id.* at 1151-52 ("In those cases where the judge determines that the time for presentation of the prosecution's case will exceed four months, the judge should oblige the prosecutor to present a reasoned basis to support a conclusion that a joint trial of all the defendants is more consistent with the fair administration of justice than some manageable division of the case into separate trials for groups of defendants.").

The Government estimated (*see* Dkt. No. 454, p. 10) a joint trial of the remaining defendants (expecting four would ultimately go to trial) would last approximately six weeks and include about 70 witnesses,[2] which could have ultimately been narrowed through stipulations and the Government's choice to call fewer law enforcement witnesses.  This nowhere near approaches the "mega-trial" benchmarks highlighted in *Casamento*.

While not a "mega-trial," the Court may generally consider the number of trial defendants and predicted length of a joint trial as factors in assessing the appropriateness of severance.  Here, the Court did not view the number of

---

[2] Crawford erroneously stated there were seven remaining defendants and argued without any further explanation that "[t]he duration of a single trial could easily approach three months, nearly the benchmark of four in *Cas[a]mento*."  Dkt. No. 418-2, p. 6.

defendants (five remaining, but likely four at trial) and projected length of a joint trial (six weeks) as being unmanageable or unwieldy, or weighing in favor of severance.

### B.    Number of Counts and Complexity of the Indictment

The Second Superseding Indictment has 26 counts, with 21 of those counts asserted against the remaining five defendants.[3]

Counts 1 through 7 of the Second Superseding Indictment allege a drug conspiracy spanning approximately early 2016 through August 28, 2019, as well as drug possession and weapons charges against Hay and Payne, only.  Counts 8 through 13 charge conspiracy to murder and murder of a federal informant, conspiracy to retaliate against and retaliating against a federal informant, discharge of a firearm in furtherance of crimes of violence and a drug trafficking crime, and discharge of a firearm causing death in furtherance of crimes of violence and a drug trafficking crime, as against Hay and Payne, only, all in relation to the July 1, 2019 murder of Jalovick (the two firearms counts also reference the drug conspiracy in Count 1).  And then the counts asserted against the obstructionist defendants, Eady, Crawford, and Blackwell, are Counts 17 through 21, and Counts 24 through 26.

The Court found in comparing this case to those discussed in Second Circuit case law, the number of remaining counts and relative complexity of the Second Superseding Indictment did not support severance.  *See*, *e.g.*, *United States v. Dinome*, 954 F.2d 839, 842 (2d Cir. 1992) ("The crimes here may have been large in

---

[3] Counts 14 through 16 are asserted against Daeshawn Stevenson, only, and Counts 22 and 23 are asserted against Eric Brooks, only.  Both Stevenson and Brooks have pled guilty and are awaiting sentencing.

number and variety, but they were rather ordinary in nature, except in their viciousness.  The evidence could also be understood without difficulty, the alleged complexity stemming more from the abundance of evidence than from the subtlety of the analysis needed to consider it."); *see Casamento*, 887 F.2d at 1150 ("Although the jury had to evaluate a tremendous amount of evidence, the nature of the evidence and the legal concepts involved in the case were not extraordinarily difficult to comprehend, as they might be, for example, in a complex anti-trust case involving abstruse economic theories or an employment discrimination case involving technical statistical evidence and formulae.  Here, the jury was required to grasp the legal significance of shipments of narcotics, sales of narcotics, and transfers of money.").

### C.  Risk of Spillover Prejudice (and Relatedly, Judicial Economy, Disproportionality of Evidence, and Risk of Guilt by Association)

The Court's discretionary determination whether to grant severance hinged largely on whether a joint trial posed a danger of spillover prejudice that could not be overcome by limiting instructions.

"The typical spillover claim is that evidence admissible against only one defendant is prejudicial to all defendants and that individual trials should have been held to avoid that prejudice."  *Dinome*, 954 F.2d at 843-44, citing *United States v. Cervone*, 907 F.2d 322, 341-42 (2d Cir. 1990), *cert. denied*, 111 S. Ct. 680 (U.S. 1991).  In other words, "[s]pillover prejudice occurs in joint trials when proof *inadmissible* against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper."  *Torres*, 2020 U.S.

11

Dist. LEXIS 129231, at *15 (internal quotation marks and citations omitted, emphasis in original); *see United States v. Nance*, 168 F. Supp. 3d 541, 553 (W.D.N.Y. 2016) ("Spillover prejudice may justify a severance . . . only where there is a risk that 'evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant.'"), quoting *Zafiro*, 506 U.S. at 539.

The Court found that case law relied upon by Eady and Crawford in support of their spillover-prejudice-related arguments, *i.e.*, *United States v. Burke*, 789 F. Supp. 2d 395 (E.D.N.Y. 2011) and *United States v. Dinome*, 954 F.2d 839 (2d Cir. 1992), was more persuasive in the context of this case than that relied upon by the Government, *i.e.*, *United States v. Cardascia*, 951 F.2d 474 (2d Cir. 1991).

***Moving Defendants' Reliance on <u>United States v. Burke</u>, 789 F. Supp. 2d 395 (E.D.N.Y. 2011) and <u>United States v. Dinome</u>, 954 F.2d 839 (2d Cir. 1992)***

In *Burke*, several defendants were charged in a seven-count indictment alleging various RICO violations, and the Court granted the motion for severance made by one of the three defendants.  *See Burke*, 789 F. Supp. 2d at 396.  The two non-moving defendants were charged with racketeering and racketeering conspiracy, with alleged predicate acts including three murders, robberies, burglaries, home invasions, kidnapping, extortion, gambling, drug trafficking, money laundering, and witness tampering, over the course of an over-30-year period and in several jurisdictions.  *Id.*  The moving defendant was not charged in any of the racketeering counts, only with witness tampering and attempted witness tampering between May 2009 and January 2010.  *Id.* at 397.  Those two substantive offenses

with which he was charged were also predicate offenses for a separate racketeering count.  *Id.*  He argued for severance pursuant to Rule 14(a), based on both prejudicial spillover and judicial economy.  *Id.* at 398-99.

The Eastern District of New York granted the motion, as it was "persuaded that the risk of prejudicial spillover [was] significant" where the counts the moving defendant was charged with were "both limited in scope and in time" as compared with the charges against his co-defendants.  *Burke*, 789 F. Supp. 2d at 399. Moreover, the Court found that a separate trial for the moving defendant would be "the most efficient use of judicial resources[.]"  *Id.* at 400.  Even though the Government would "present some overlapping proof" about the moving defendant's alleged status in relation to the enterprise as background, the proof required to sustain a conviction on the witness tampering charges against the moving defendant was "substantially different" from proof required to convict the non-moving defendants on the 30-year RICO conspiracy.  *Id.*

Likewise, in *Dinome*, the Second Circuit reversed the convictions of two non-RICO defendants (convicted of mail and wire fraud) in a 16-month-long RICO jury trial who were denied a severance motion, in part because at trial the moving defendants "were swamped by [a] mass of irrelevant evidence."  *Dinome*, 954 F.2d at 841-42, 844-55.  The Circuit reasoned, "[w]e cannot escape the conclusion that the evidence against [the non-RICO defendants]' codefendants -- including vicious murders, loansharking, auto theft, pornography, and firearms trafficking . . . -- was prejudicial to the [non-RICO] defendants."  *Id.* at 844.  The Circuit also reasoned that

a trial for the non-RICO defendants "could have been completed in a very short period of time, with the risk of spillover prejudice entirely eliminated." *Id.* at 845.

The Government argued *Burke* and *DiNome* are "extreme examples" of when a trial court should consider severance, with a greater assortment of violence by the "lead" defendants who were charged with criminal activity that spanned a lengthier period than is charged in this case. The Government also reasoned this case law does not stand for the blanket proposition that any case involving violence warrants granting severance for co-defendants not charged with violence.

The Court did not disagree with either assertion by the Government, and neither did Eady or Crawford. *Burke* and *DiNome* are certainly more "extreme" on the facts, and neither case suggests that the existence of violence alone, charged only against non-moving defendants, necessitates severance of moving defendants.

However, both *DiNome* and *Burke* encapsulate the idea that spillover prejudice may pose a problem—and one that may not be cured by limiting instructions—if it subjects defendants to otherwise inadmissible evidence of activities of a violent nature. *See United States v. Tuzman*, 301 F. Supp. 3d 430, 445 (S.D.N.Y. 2017) ("For example, a severance might be appropriate where some defendants are charged with serious violent crimes that will take months to [be tried], while other defendants are charged with less serious, non-violent offenses that could be quickly tried separately."), citing *DiNome*, 954 F.2d at 844 and *United States v. Bellomo*, 954 F. Supp. 630, 650-51 (S.D.N.Y. 1997) (granting severance to defendants who were charged with conducting illegal bookmaking businesses and/or transmitting wagering information via wire where, "[a]bsent severance, these

14

defendants would face a lengthy trial that would include evidence of a RICO enterprise in which none of them [was] charged with participating," and thus "there [was] clear potential for spillover prejudice").

Eady's position was that a trial of the remaining obstructionist defendants would be "simple, straightforward, and streamlined," focusing on proof contravening Eady's grand jury testimony about who was present at the time of the murder.  He contrasted this proof with the extensive murder-related evidence the Government would surely use to prove the identity of Jalovick's killers at a trial of Hay and Payne. Eady argued that the Government could not introduce murder-related evidence *against* Eady because there was no allegation that he participated in the murder itself; in other words, "[a]t most, the murder is a factual predicate to the obstruction charge."  The Court does recall Eady conceding at oral argument that the events of the day of the murder (while perhaps not the murder's planning and aftermath) would be admissible, as background evidence of his crimes.  In sum, Eady posited that evidence of Jalovick's murder would be admissible in a severed trial, but not in the same magnitude as asserted by the Government.

In stark contrast to this position, the Government argued it would introduce "nearly identical" and "overlapping" evidence of Jalovick's murder against all defendants (especially as to Eady), which was "inescapable" regardless of severance.  And in response to Eady's argument that the years-long drug conspiracy would not be admissible against him, as the Court remembers, the Government orally argued that the drug evidence is "small potatoes" when

compared with admissible murder-related evidence, and therefore any drug-related evidence inadmissible at a severed trial did not compel severance.

At this stage of the case and in ruling on the severance motions, the Court did not need to conclusively determine what murder-related evidence would be admissible and what evidence would not.[4]  However, the Court gathered that admissibility conceivably rested somewhere between the two extremes—*i.e.*, virtually none according to Eady, and virtually all according to the Government.

In any event, the Court observed that neither Eady nor Crawford were charged with "participating" in the murder or drug conspiracy, and thus, the trial against Hay and Payne would presumably involve a great volume of evidence about matters that were "not alleged to have been a part of their criminal activity." *Bellomo*, 954 F. Supp at 65.  In the same vein, the counts charged against Eady and Crawford are "limited in scope and in time" as compared with the charges against Hay and Payne, and despite "some overlapping proof," a trial of Eady and Crawford could be completed in a relatively short period of time.[5]  Furthermore, the proof

---

[4] In the parties' second round of supplemental briefing, they engaged in interesting and divergent arguments about the applicability of *Old Chief v. United States*, 519 U.S. 172 (1997), namely, whether the Government could reject a stipulation by Eady that Hay and Payne killed Jalovick.

[5] In response to the Court's directive, as stated above, the Government approximated a joint trial would last six weeks, with approximately 70 witnesses.  In addition, the Government asserted that a severed trial of Crawford, only, would take 1 ½ weeks, with at least two crossover witnesses, while a trial of Hay, Payne, and Eady would take 6 weeks and involve 70 witnesses.  Considering if the Court were to grant both Crawford's and Eady's motions and try them in one group, with Hay and Payne in another group, the Government asserted a severed trial of Crawford and Eady would take four weeks, with about 34 crossover witnesses.  These estimates, however, were clearly predicated on the Government's position that much of the murder-related proof would be admissible in either a joint trial or a severed trial.

needed to sustain convictions of Eady and Crawford on the obstruction charges is indisputably "substantially different" from that required to convict Hay and Payne of the years-long drug conspiracy, the various murder-related charges, and the weapons charges.  *Burke*, 789 F. Supp. 2d at 399-400; *see Dinome*, 954 F.2d at 845; *see also Gallo*, 668 F. Supp. at 750 ("Where the evidence against the 'minor' defendants is so little or so vastly disproportionate in comparison to that admitted against the remainder of the defendants . . ., the likelihood of spillover prejudice is greatly enhanced . . . The courts must be scrupulous to avoid the spectre of guilt by association -- or, more likely, guilt by confusion . . . The problem is especially acute for those defendants whose alleged activities did not include the sort of violent or heinous offenses with which some of their brethren are charged.").

### Government's Reliance on <u>United States v. Cardascia</u>, 951 F.2d 474 (2d Cir. 1991)

The Government, in response to the moving defendants' reliance on *Burke* and *DiNome*, cited the well-established proposition in *United States v. Cardascia*, 951 F.2d 474 (2d Cir. 1991) that "disparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant a severance."  *Id.* at 483 (internal citations omitted).

In the *Cardascia* opinion, however, the sentences immediately preceding the language quoted by the Government are: "[r]elief by severance may be more appropriate when the unrelated evidence reflects activities of a violent nature because the risk of substantial prejudice is greater.  The unrelated evidence presented in the instant case revealed only another bank fraud scheme . . . We

17

therefore do not accept the 'guilt by association' argument appellants advance, and do not believe [they] were denied a fair trial."  *Id.* at 483.  Thus, in *Cardascia*, the Second Circuit held that where two defendants were involved in only one of two unrelated bank fraud conspiracies (neither involving violent conduct) and were tried together with their codefendants, the trial court did not abuse its discretion in denying the former defendants' motion for trial severance, even while recognizing that the defendants "may have suffered some prejudice when they were forced to sit before the jury for over a month [in a 40-day trial] without any evidence being introduced concerning their activities."  *Id.* at 478, 483-84.

The Government argued that per *Cardascia*, the jury would be able to compartmentalize evidence if cautionary or limiting instructions were used, which would be sufficient to "cure" the risk of possible prejudice at least as to Eady.  It acknowledged, however, that Crawford's situation is "different" because she was not present in the backyard when the murder occurred, and therefore the Court in examining the expected proof against Eady and Crawford, respectively, might decide "they require[d] different results regarding their pending severance motions."[6]

The nature of the charges against the moving defendants in *Cardascia* (a fraud conspiracy, similar in breadth and seriousness to the fraud conspiracy charged against the non-moving defendants), is readily distinguishable from the charges against the moving defendants in this case (obstruction of justice and false declarations before a grand jury, in contrast to murder and a years' long drug

---

[6] The Court took this as a concession by the Government that severing Crawford might be appropriate under the circumstances of this case.

conspiracy and weapons offenses charged against the non-moving defendants). The Court concluded that such alleged acts of violence by the lead defendants would be inherently more difficult for jurors to compartmentalize, even with strong and frequent limiting instructions.

### No Overarching Conspiracy Count

The likelihood of spillover prejudice is diminished when there is a conspiracy charge uniting the moving defendants with the non-moving defendants. "[S]everance [is] rare in conspiracy cases where the 'government [is] . . . entitled to show the entire range of evidence of the conspiracy against each [defendant],' even where 'one [defendant]'s role in the conspiracy may have been smaller or less central than that of certain other co-conspirators.'" *United States v. Blackshear*, 313 F. App'x 338, 342 (2d Cir. 2008) (summary order), quoting *United States v. Nersesian*, 824 F.2d 1294, 1304 (2d Cir. 1987); *see United States v. Salameh*, 152 F.3d 88, 111, 115 (2d Cir. 1998) (per curiam) (holding prejudice is "an unlikely occurrence when all the defendants are charged under the same conspiracy count" because "[w]here a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant"), citing *DiNome*, 954 F.2d at 843-44; *see also United States v. Villegas*, 899 F.2d 1324, 1347 (2d Cir. 1990) (one relevant factor in spillover prejudice analysis is "to what extent the evidence

presented at the joint trial would have been admitted at a single-defendant trial because of the alleged conspiratorial nature of the illegal activity").[7]

As noted above (*see supra*, p. 10), only Hay and Payne are charged with a multi-year drug conspiracy and conspiracy relative to the murder of Jalovick—none of the remaining obstructionist defendants are charged with these crimes, and the Government has alleged no direct involvement by either Eady or Crawford in the conspiracy crimes.[8]  Thus, this case is distinguishable from the many cases in this Circuit where severance has been denied because of—at least in part—an overarching conspiracy.  *See*, *e.g.*, *Torres*, 2020 U.S. Dist. LEXIS 129231, at *14-16 (denying severance where, although the moving defendant was "not alleged to have been directly involved" in either the charged murder of a rival drug dealer or the

---

[7] In its initial opposition papers, the Government cited case law that states the presumption in favor of joint trials is particularly strong when the crimes charged involve "a common scheme or plan." *United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979); *see United States v. Contreras*, 216 F. Supp. 3d 299, 305 (W.D.N.Y. 2016).  There is also a great deal of case law stating the proposition that "[j]oint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy[.]"  *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003).  The Court had the parties brief whether the phrase "common scheme or plan" in the context of Rule 14 is considered functionally synonymous with an overarching criminal conspiracy.  The Court concluded that Second Circuit case law is murky on this point, as many decisions appear to use these two concepts interchangeably.  *See*, *e.g.*, *United States v. Fazio*, 770 F.3d 160, 166 (2d Cir. 2014); *United States v. Thompson*, 504 F.3d 160, 173 (W.D.N.Y. 2020).

Even if "common plan or scheme" and "same criminal conspiracy" are divergent concepts in the Rule 14 context, the Government stated in its supplemental filing, "[t]he [G]overnment has always contended that while the murder counts and obstruction and perjury counts are separate offenses, joinder is appropriate because they form an integrally connected whole as *a series of acts or transactions having a logical relationship*."  Dkt. No. 454, p. 7 (internal quotation marks and citation omitted, emphasis added); *see* Fed. R. Crim. P. 8.  The Court is unaware of any fleshed-out allegation by the Government that Eady and Crawford participated in a "common plan or scheme" with Hay and Payne.

[8] Count 1 charges a drug conspiracy, Count 8 charges conspiracy to murder a federal informant, and Count 10 charges conspiracy to retaliate against a federal informant.

attempted murder of federal agents, those "acts . . . were allegedly performed during and in furtherance of the conspiracy," and "[f]or that reason, [those] violent acts [did] not give rise to the sort of prejudice that justifies severance").

**Impact of Risk of Spillover Prejudice**

In sum, the Court concluded that the inevitability of spillover prejudice in this case, which limiting instructions would not likely curtail, weighed heavily in favor of granting Eady's and Crawford's respective motions for severance.

D.    **Sixth Amendment Speedy Trial Right**

The second central argument by Eady for severance was that his Sixth Amendment right to a speedy trial would be jeopardized if the Court were to deny his severance motion and if he had to wait until Hay and Payne were ready for trial.  He thus claimed a potential, future Sixth Amendment violation should his request for relief be denied.  The Court found that severing trials would work to protect "a specific trial right" (*Feyrer*, 333 F.3d at 114) of Eady's and Crawford's, their constitutional right to a speedy trial, which could be compromised should trial be prolonged any further.

The Supreme Court has identified four inter-related factors to be considered in determining whether a defendant's constitutional right to a speedy trial has been violated: " '[1] the length of delay, [2] the reason for the delay, [3] the defendant's assertion of his right, and [4] prejudice to the defendant.' "  *Doggett v. United States*, 505 U.S. 647, 651 (1992), quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

This Court concluded, and the Government did not dispute, that the length of the delay in this case (over 35 months as of the date of this Decision and Order,

21

since Eady's arrest on May 20, 2020, *see* Dkt. No. 63), was presumptively

prejudicial, and would therefore trigger the Court's consideration of the other three

*Barker* factors had Eady argued a Sixth Amendment violation.  *See United States v.*

*Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992) (in the Second Circuit, there is a

"general consensus" that a delay of more than eight months is presumptively

prejudicial and merits further inquiry).

Again, Eady did not assert his Sixth Amendment rights had been violated.

Rather, he claimed that absent severance, such a violation would occur due to the

nature and complexity of the case against Hay and Payne and the anticipated future

delays in bringing their case to trial, as compared with his case being trial-ready

much sooner.  Indeed, due to their attorneys' trial schedules, Hay and Payne

indicated at the proceeding held on February 22, 2023 that they would be

unavailable for trial until November 2023.  Thirty-five months is already a

significantly lengthy period to await trial, and a joint trial in November would add

another six months or so.  The Court concluded that awaiting a joint trial would place

Eady's and Crawford's Sixth Amendment rights in peril.

The Court clarifies that it did not find a Sixth Amendment violation.  Rather,

the Court found that a Sixth Amendment violation could occur if Eady and Crawford

were to remain joined for trial with the lead defendants.  It considered the

presumption of prejudice inherent in a sufficiently lengthy delay that may also be

enough for a defendant to prevail on a Sixth Amendment claim even absent "proof of

particularized prejudice" (*Doggett*, 505 U.S. at 655).  It also considered Eady's rather

"frequent[ ], consistent[ ], and explicit[ ]" (*United States v. Reyes-Batista*, 844 F. App'x 404, 407 (2d Cir. 2021) (summary order)) assertions of his speedy trial rights.

### E.   Rule 14 Balancing

The Court engaged in a careful and thorough balancing of the various factors (*see*, *e.g.*, *Gallo*, 668 F. Supp. at 749) weighing for and against severance.  Of course, the Court is aware of the myriad reasons joint trials are generally favored in federal court, due to "equitable and practical considerations" (*Contreras*, 216 F. Supp. 3d at 303).  The Court concluded, however, on the facts and circumstances of this case, that Eady and Crawford met their heavy burden of establishing that any prejudice they might suffer because of a joint trial with Hay and Payne would be sufficiently severe enough to outweigh the interest of judicial economy in trying the defendants jointly.

With respect to Crawford's request that she be tried separately from Eady, the Court found that holding three separate trials, one for Crawford, one for Eady, and one for Hay and Payne, would be completely impractical and an entirely inefficient use of the Court's and the Government's time and resources.  Moreover, because Eady and Crawford are both charged with obstruction-related offenses, the proof is logically connected between these two defendants and supported grouping the trial defendants in this fashion.

### III.   <u>Order of Severed Trials</u>

When the Court determined that the remaining obstructionist defendants should be tried together, separate from the lead defendants, it was still faced with the quandary of which trial group should be tried first.  Case law cited by the

Government suggested that defendants have no right to be tried in a particular order in the event of a severance; rather, this was a matter of the District Court's discretion as was the decision whether to grant or deny a severance motion in the first instance.

The Government argued that it preferred Hay and Payne be tried first.  Again, this posed potential Sixth Amendment speedy trial issues should Eady and Crawford be made to await the conclusion of a six-week-long trial commencing in November 2023, to then have their case tried thereafter.

Trying Hay and Payne first would create Speedy Trial Act issues as well.  The Speedy Trial Act "imposes a unitary time clock on all co-defendants joined for trial." *United States v. Vasquez*, 918 F.2d 329, 337 (2d Cir. 1990).  As a result, "delay attributable to any one defendant is charged against the single clock, thus making the delay applicable to all defendants."  *United States v. Pena*, 793 F.2d 486, 489 (2d Cir. 1986).  Upon granting severance, however, Eady and Crawford would operate on their own speedy trial clock, distinct from Hay's and Payne's (as they are now)—meaning the Court would require reasons to exclude time as to Eady and Crawford, specifically, until the date of their trial.  The Court found the Government's suggested, vague reasons to exclude time unsound, particularly considering the lengthy period Eady and Crawford would have to wait until the conclusion of Hay's and Payne's trial.

As such, the Court concluded, in its discretion, that Eady and Crawford would be tried first, to be followed by Hay and Payne upon their attorneys' availability for trial.

## <u>CONCLUSION</u>

As previously stated on the record, and for the reasons articulated in further detail above, it is hereby

**ORDERED** that the motions to sever filed by defendant Roland Eady (Dkt. No. 378) and defendant Angel Crawford (Dkt. No. 418) are GRANTED; and it is further

**ORDERED** that jury selection for Eady and Crawford is scheduled for July 11, 2023 at 9:30 a.m., jury selection for Hay and Payne is scheduled for November 6, 2023 at 9:30 a.m., and a change-of-plea for Blackwell is scheduled for May 30, 2023 at 10:00 a.m.  In the event Blackwell's plea does not go forward, Blackwell shall be tried on July 11, 2023, along with her obstructionist co-defendants.

The foregoing proceedings will all be held in person and in the Courtroom. Moreover, in tandem with this Decision and Order, the Court is issuing a Final Pretrial Order as to Eady and Crawford, setting a new date for a Final Pretrial Conference, and scheduling both a Final Status Conference and dates for trial submissions.

**IT IS SO ORDERED.**

           *s/Richard J. Arcara*
           HONORABLE RICHARD J. ARCARA
           UNITED STATES DISTRICT COURT

Dated:  May 10, 2023
       Buffalo, New York